IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AMY J. REISINGER AND STEELFUSION CLINICAL TOXICOLOGY LABORATORY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CURT E. HARPER, ALABAMA DEPARTMENT OF FORENSIC SCIENCES, PRENTISS JONES, JR., WESTERN MICHIGAN UNIVERSITY HOMER STRYKER M.D. SCHOOL OF MEDICINE, AND RANDOX LABORATORIES, LTD.,<br><br>Defendants. | Civil Action No: 2:22-CV-01565-NAD |

**MOTION TO DISMISS OF DEFENDANTS ALABAMA DEPARTMENT OF FORENSIC SCIENCES AND CURT E. HARPER**

Defendants Alabama Department of Forensic Sciences and its Chief Toxicologist, Dr. Curt E. Harper, ("Dr. Harper") move to dismiss the claims of Plaintiffs Dr. Amy J. Reisinger ("Dr. Reisinger") and Steelfusion Clinical Toxicology Laboratory, LLC ("Steelfusion") (collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  In support Defendants Alabama and Dr. Harper state the following:

**SUMMARY**

A State may **not** be sued in Federal court for patent infringement when (i) the State has not waived sovereign immunity with respect to patent infringement, and (ii) the State offers an alternative mode of recovery for such infringement.  Both elements are satisfied with respect to Alabama.  In addition, the infringement allegations against Dr. Harper pertain only to his activities undertaken as the Chief Toxicologist of the Alabama Department of Forensic Sciences.  As a

result, his allegedly infringing actions are also covered by the doctrine of sovereign immunity. Plaintiffs' proper mode of recovery lies in a claim against the State before the Alabama Board of Adjustment, which was established to adjudicate claims against the State of Alabama, including any of its departments, for injuries to property and any claims barred by sovereign immunity.

## MOTION TO DISMISS STANDARD

Although a court construes the complaint in the light most favorable to the plaintiff when considering a Rule 12(b) motion, it is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, a court can make reasonable inferences in plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 679, (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–62, 570 (2007). In *Twombly*, the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555.

## FACTS

The Alabama Department of Forensic Sciences ("Alabama") is a department of the State of Alabama. Plaintiffs have alleged four infringement claims against Alabama and Dr. Harper. (Doc. 001 at 40, 47, 54, and 60). The Complaint notes that Dr. Harper is the "Chief Toxicologist at the Birmingham Laboratory of the Alabama Department of Forensic Sciences located at 2026 Valleydale Road, Shelby County, Hoover, Alabama 35244." (Id. at ¶4). All allegations of Dr.

Harper's infringing use of forensic techniques involving the toxicological testing of the oral fluids of post-mortem human subjects was undertaken at Alabama laboratories using the Randox MultiSTAT oral fluid testing product. (Id. at ¶¶ 23, 59-63, 65). While the Complaint alleges use without attribution of Plaintiff Dr. Reisinger's ideas in several presentations given in academic and forensic industry settings, no allegations are made that such use constitutes infringement. (Id. at ¶¶ 16-17, 22, 25, 27, 29, 40-41, 64-65).

## ARGUMENT

Plaintiffs' four claims against Alabama and Dr. Harper—all for patent infringement—are each barred by the doctrine of sovereign immunity.[1] Under the Eleventh Amendment, this Court lacks jurisdiction to consider the claims of patent infringement against Alabama and Dr. Harper. As a result, this suit should be dismissed because this Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and the Complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

### Infringement Claims against the Alabama Department of Forensic Sciences

The Eleventh Amendment provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[2]

---

[1] While this Motion to Dismiss travels under the reasoning discussed in *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627 (1999), and therefore the Eleventh Amendment, Alabama does not disclaim Federal sovereign immunity afforded to the States under other sections of the Constitution and other sources of law. *See Alden v. Maine*, 527 U.S. 706, 731-45 (1999).

[2] Regarding the Eleventh Amendment, the Supreme Court explained the interconnection between sovereign immunity and the jurisdiction of Federal courts over States (or the lack thereof): "Although the text of the Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts, 'we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition ... which it confirms.' That presupposition, first observed over a century ago . . . has two parts: first, that each State is a sovereign entity in our federal system; and second, that '"[i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. . . ."* Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996) (internal citations omitted). Indeed, the principles of sovereign immunity and the Eleventh Amendment's exclusion of jurisdiction over States are treated as essentially intertwined throughout *Fla. Prepaid. See generally*, 527 U.S. 627.

As a result, Federal Courts lack jurisdiction over sovereign States that have not consented to be sued.

Alabama has not waived sovereign immunity for patent infringement; indeed, Alabama state law prohibits it from doing so: "[T]he State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const., § 14.  The Alabama Supreme Court explained the effect of this Constitutional provision, "The wall of immunity erected by § 14 is nearly impregnable. This immunity **may not be waived.** 'This means not only that the [S]tate itself may not be sued, but that this cannot be indirectly accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly to affect the financial status of the state treasury.'" *Ex parte Ret. Sys. of Alabama*, 182 So. 3d 527, 533 (Ala. 2015) (quoting *State Docks Comm'n v. Barnes*, 143 So. 581, 582 (Ala. 1932) (internal citations omitted)) (emphasis added).  There are six categories[3] of actions that survive the bar imposed by § 14, none of which encompass patent infringement. *Id*.

Furthermore, the Supreme Court of the United States has explicitly held no Federal law has waived sovereign immunity for patent infringement on a State's behalf. *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627 (1999).  After the Patent and Plant Variety Protection Remedy Clarification Act ("the Act") amended Federal patent laws to expressly abrogate the States' sovereign immunity with respect to patent infringement, the College Savings Bank filed an infringement suit against Florida Prepaid, a Florida state entity. *Id.* at 627. The Supreme Court held the Act's abrogation of States' sovereign immunity with respect to patent

---

[3] These are (1) actions to compel State officials to perform their legal duties; (2) actions to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; (4) actions under the Declaratory Judgment Act, § 6–6–220 et seq., Ala. Code 1975, seeking construction of a statute and how it applies in a given situation; (5) valid inverse-condemnation actions brought against State officials in their representative capacities; and (6) actions to enjoin State officials from acting fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law. *Ex parte Ret. Sys. of Alabama*, 182 So. 3d 527, 533 (Ala. 2015).

infringement was invalid because Congress had no authority to do so under neither the Commerce Clause, the Patent Clause, nor the Fourteenth Amendment's Due Process Clause. *Id.* at 627, 635-36. Applying the first prong of a two-part test established under *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 55 (1996), the Court began its opinion by noting that there was no doubt that the Act intended to do away with States' immunity from patent infringement and disposing of the notion that the Commerce and Patent Clauses of the Constitution granted Congress the power to limit State sovereign immunity. *Id.* at 633. The Court then added that, although sovereign immunity may not be abrogated by Congress's powers under Article I, Congress does retain the power to reduce the scope of state sovereign immunity under the Fourteenth Amendment's due process guarantee that prohibits depriving any person of property without due process of law. *Id.* at 637-38. However, the Court explained that power is not without limit as legislation abrogating State sovereign immunity must be shown by Congress to be "appropriate," or as applied by the Court with respect to the Act, "it must identify conduct transgressing the Fourteenth Amendment's substantive provisions" and "tailor its legislative scheme to remedying or preventing such conduct." *Id.* at 639.

The Court determined that Congress "identified no pattern of patent infringement by the States, let alone a pattern of constitutional violations." *Id*. at 640. To the contrary, the Court noted that testimony before the House Subcommittee in favor of the bill acknowledged that "states are willing and able to respect patent rights. The fact that there are so few reported cases involving patent infringement claims against states underlies the point." *Id.* at 640. As a result, the Court held that:

> Thus under the plain terms of the Clause and the clear import of our precedent, a State's infringement of a patent, though interfering with a patent owner's right to exclude others, **does not by itself violate the Constitution. Instead, only where the State provides no remedy, or only inadequate remedies, to injured patent**

5

> **owners for its infringement of their patent could a deprivation of property without due process result.**

*Id.* at 643. The Court, in its consideration of State-provided modes of remedy, observed when Congress passed the Act it "said nothing about the existence or adequacy of state remedies in the statute or in the Senate Report, and made only a few fleeting references to state remedies in the House Report, essentially repeating the testimony of the witnesses." *Id.* at 644. The Court accordingly determined that the Act was not intended to provide a previously-unavailable means of offering patent owners a remedy for infringement, but rather to "provide a uniform remedy for patent infringement and to place States on the same footing as private parties under that regime." *Id.* at 647-48. As a result, the Court held the Act unconstitutional, noting that homogenizing patent infringement remedies was not sufficient justification for Congress to limit State sovereign immunity under the Fourteenth Amendment.[4] *Id.*

The State of Alabama offers remedy for patent infringement in claims brought before the Alabama Board of Adjustment.

> The Board of Adjustment shall have the power and jurisdiction and it shall be its duty to hear and consider: **All claims for damages to the** person or **property growing out of any injury done to** either the person or **property by the State of Alabama or any of its** agencies, commissions, boards, institutions or **departments**, with the exception of claims by employees of the state for personal injury or death arising out of the course of employment with the State of Alabama, where such employees are covered by an employee injury compensation program.
> . . .

---

[4] As recently as 2020, the Supreme Court again held Congress lacked the authority to abrogate the States' immunity in infringement cases, this time with respect to copyright infringement under the Copyright Remedy Clarification Act. *Allen v. Cooper*, 140 S. Ct. 994, 996 (2020). Relying heavily upon *Fla. Prepaid*, the Court invalidated CRCA's provisions stripping sovereign immunity from States for copyright infringement, noting that "*Florida Prepaid* all but prewrote our decision today" in a not-subtle endorsement of the 1999 decision. *Id.* at 1007.

Ala. Code § 41-9-62(a)(1).  As noted by the Court in *Fla. Prepaid*, intellectual property (like patents) constitutes property as contemplated under the Fourteenth Amendment.  *Fla. Prepaid*, 524 U.S. 627 at 633.

The Supreme Court of Alabama has also "indicated the purpose for which the State Board of Adjustment was created."  *State ex rel. McQueen v. Brandon*, 12 So. 2d 319, 325 (1943).  In that case, the Alabama Supreme Court observed that this purpose was to provide injured parties with an avenue of recovery for any cause of action barred by sovereign immunity:

> The act of the legislature created a means of extending a measure of compensation or relief to citizens entitled thereto, who unfortunately suffered injury occasioned by the state or some of its agencies, commissions, boards or institutions or departments, while engaged in the performance of the sovereign functions or duties of the state, **and for which the rule of sovereign immunity exempts the state** and its respective agencies, commissions, boards, institutions **or departments** from any other duly recognized form of legal action to compensate for such unlawful act and proximate injury.

*Id.* (emphasis added).  As a result, Plaintiffs may avail themselves of the due process required under the Fourteenth Amendment for an alleged injury against its intellectual property at the Alabama Board of Adjustment.

The Northern District of Alabama has previously held that Federal sovereign immunity under the Eleventh Amendment applies to claims for injuries to intellectual property, and that the Alabama Board of Adjustment properly constitutes a valid forum in which to bring such a claim.  *See generally, Collins v. Univ. of Ala. at Birmingham, et al.*, No. 2:09-CV-00856-JEO (N.D. Ala. Nov. 13, 2009).[5]  In that case, the plaintiffs brought a copyright infringement suit against a state entity, the University of Alabama at Birmingham ("UAB").  UAB moved to dismiss, citing *Fla. Prepaid* for the proposition that the infringement claim was barred by the Eleventh Amendment.

---

[5] This opinion is attached as Exhibit 1 for the Court's convenience.

*Id.* at 3.  The plaintiffs countered that the availability of claims at the Board of Adjustment was inadequate to satisfy its due process right under the Fourteenth Amendment. *Id.* at 8.  The Northern District was not persuaded that the Board of Adjustment did not provide an avenue for proper remedy, and dismissed the infringement claims against UAB with prejudice. *Id.* at 8-9, 17.

Because the Eleventh Amendment renders a state immune to claims for patent infringement if the State has not consented to be sued on that basis, Plaintiffs' claims for patent infringement against Alabama should be dismissed with prejudice.

### Infringement Claims against Dr. Harper, Chief Toxicologist, Alabama Dept. of Forensic Sciences

It is also well-settled that state officials sued in their official capacity are also entitled to sovereign immunity. *BWW, Inc. v. Brigham*, No. 1:21-CV-470-CLM, 2022 WL 433320, at *3 (N.D. Ala. Feb. 11, 2022) (citing *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998)).  This extension of sovereign immunity is subject to three exceptions: (1) when a state waives its Eleventh Amendment sovereign immunity and consents to suit in federal court, (2) when Congress, acting pursuant to § 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so, and (3) when a state official is sued for prospective injunctive relief to end a continuing violation of federal law. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1278 (11th Cir. 1998).  As discussed above, the first exception does not apply because Alabama has not waived its Eleventh Amendment sovereign immunity and the second exception does not apply because Congress has not successfully abrogated any State's sovereign immunity with respect to Patent Infringement. *Fla. Prepaid*, 527 U.S. 627 at 639.

The final exception, allowing a claim for injunctive relief against a state official to end a continuing violation of federal law (in this case, allegations of continued instances of patent

infringement[6]) is established by the doctrine of *Ex parte Young*. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 102 (1984). This doctrine rests on the premise that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. *Id.* The doctrine is limited to that precise situation, and does not apply "when 'the state is the real, substantial party in interest.'" *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255, (2011).

For Plaintiffs' claim for injunctive relief, Alabama is the real, substantial party in interest because any injunction Plaintiffs seek would ultimately require ***Alabama***—not Dr. Harper or any other individual employee of the State—to stop using Dr. Reisinger's patented toxicological testing methods. Enjoining Dr. Harper from engaging in forensic testing procedures that allegedly infringe Dr. Reisinger's patents would, after all, be easily circumvented by simply having another technician perform the test. As a result, this final exception to the extension of sovereign immunity to state officials does not apply to Dr. Harper.

### No Claims are Made against Dr. Harper in his Personal Capacity

In the Complaint, Plaintiffs do not explicitly state whether Dr. Harper is being sued in his official capacity only or in both his official and personal capacity. (*See* Doc. 001 at 1, 4). But, the detailed factual allegations of the 69-page Complaint allege no infringing conduct by Dr. Harper (*i.e.* private toxicological testing oral fluids of a deceased human) outside of any State of Alabama laboratories or in any other personal capacity. (Id. at ¶¶ 23, 59-63, 65). From a practical standpoint, private toxicological testing on a posthumous human subject would be highly impractical for a litany of reasons, including state regulation regarding transport of the deceased.

---

[6] Note: Defendants do not concede that any patent infringement by Alabama and Dr. Harper violates the Constitutional rights of Plaintiffs.

*See* Ala. Code § 22-19-1.  While the Complaint alleges use without attribution of Dr. Reisinger's ideas in several presentations given in academic and forensic industry settings where Dr. Harper could have been acting in his individual capacity (Id. at ¶¶ 16-17, 22, 25, 27, 29, 40-41, 64-65), even in a cast in a light most favorable to Plaintiffs, such use cannot be said to constitute patent infringement.  An issued patent grants the owner an exclusive right to make, use or sell the claimed invention for the life of the patent. 35 U.S.C. § 271.  The Complaint does not allege that Dr. Harper has made, used, or sold the claimed invention in his personal capacity—only that he has discussed the claimed invention in an industry or academic setting.  "Discussing" cannot support a claim for patent infringement—there must be an allegation that the defendant has made, used, or sold the claimed invention.  The Plaintiffs have pled no facts that could support a claim for patent infringement against Dr. Harper in his personal capacity.

Based upon the facts pleaded in the Complaint, Dr. Harper has been sued only in his official capacity and, because none of the *Harbert* exceptions are met, is entitled to sovereign immunity.  As a result, the patent infringement claims against Dr. Harper should be dismissed with prejudice.

## CONCLUSION

All of Plaintiffs' claims are for patent infringement, and patent infringement claims have been specifically determined by the Supreme Court to be subject to an individual state's consent to be sued on that basis and the presence of an alternative means of recovery.  Alabama has not consented to be sued for patent infringement, and is in fact bound by its Constitution not to consent to be sued in any capacity.  Furthermore, Alabama provides a means of recovery for patent infringement at its Board of Adjustment, satisfying any Due Process concerns.

Finally, the Complaint neither explicitly names Dr. Harper in his individual capacity nor alleges any acts that could constitute infringement of the Patents-in-Suit. As a result, Dr. Harper has been sued only in his official capacity and is entitled to sovereign immunity as a State official.

For these reasons, Plaintiffs' Complaint is due to be dismissed with prejudice.

Respectfully submitted this the 17th day of February, 2023.

*s/ Marcus R. Chatterton*

**OF COUNSEL:**

Marcus R. Chatterton
Email: mchatterton@balch.com
James T. Dawkins
USPTO Reg. No. 79,093
Email: jdawkins@balch.com
BALCH & BINGHAM LLP
1901 6th Avenue North
Suite 1500
Birmingham, AL 35203
Telephone:     (205) 251-8100
Facsimile:      (205) 226-8799

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following CM/ECF participant(s) electronically on this the 17th day of February, 2023:

*s/ Marcus R. Chatterton*
Of Counsel